UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


BECKY BROWN, ET AL.                                                              PLAINTIFFS


v.                                                                      NO. 3:12-CV-00818-CRS


PADUCAH & LOUISVILLE                                                             DEFENDANTS
RAILWAY, INC., ET AL.


## MEMORANDUM OPINION

This case is before the Court on a motion to remand filed by the Plaintiffs, Becky Brown,

Susan E. Morgan, James Perry, Jr., and Michael C. Smith ("Plaintiffs"), against the Defendants,

Paducah & Louisville Railway, Inc., P&L Transportation, Inc., R.J. Corman Railroad Group,

LLC, Center for Toxicology and Environmental Health, LLC, and CSX Transportation, Inc.

(individually, or collectively "Defendants") (DN 18). For the reasons set forth below, the Court

will deny the motion to remand.

## BACKGROUND

The following facts are undisputed. This case arose in the wake of a train derailment that

occurred on October 29, 2012, near the city of West Point, Kentucky. (Compl., DN 1-1, at ¶ 1).

The train was transporting large quantities of hazardous chemicals, a significant amount of which

was released into the surrounding environment when the train derailed. (Compl. at ¶ 5). In

response, local authorities ordered the closure of a nearby state highway, established a no-fly

zone in the surrounding airspace, and completely stopped maritime traffic on the Ohio River. *See*

(Compl. at ¶¶ 12–13). In addition, all persons within a 1.2-mile radius of the derailment site were

required to evacuate their homes and seek shelter elsewhere. (Compl. at ¶ 8). According to the Plaintiffs, these events caused them substantial damages, including but not limited to "injuries to interests in property…, economic losses…, personal injuries…, [and] lost income…" (Compl. at pp. 12–13).

The Plaintiffs filed suit in Hardin County Circuit Court on November 20, 2012, seeking certification of a class action. (Notice of Removal, DN 1, at ¶ 1). The Defendants subsequently removed the case to this Court on December 6, 2012, claiming that diversity jurisdiction existed under the Class Action Fairness Act ("CAFA"). (Notice of Removal at ¶¶ 11–14). In response, the Plaintiffs have moved to remand the action to Hardin County Circuit Court on the ground that this Court lacks jurisdiction under CAFA. (Mot. to Remand, DN 18-1, at 1–2).

The Court will first address the Plaintiffs' argument that remand is necessary because the Defendants have failed to satisfy their burden of establishing CAFA's requirements for removal. For the reasons set forth herein, the Court concludes that the Defendants have successfully satisfied their burden of justifying removal under CAFA. The Court will next address the Plaintiffs' argument that, even if the Defendants have satisfied their burden of demonstrating that removal was appropriate under CAFA, remand is nevertheless required because this case falls within an exception to CAFA. For the reasons set forth herein, the Court concludes that none of CAFA's exceptions are applicable and that remand is therefore inappropriate. Thus, the Court will deny the Plaintiffs' Motion to Remand.

## STANDARD

Under CAFA, federal district courts have original jurisdiction over any class action in which 1) any plaintiff is a citizen of a state different from any defendant; 2) the proposed plaintiff class (or classes) contain(s) at least 100 members in the aggregate; and 3) the amount in

controversy exceeds five million dollars. 28 U.S.C. § 1332(d)(2); *id.* § 1332(d)(5)(B). As the

party invoking federal jurisdiction, the defendant bears the burden of establishing these

jurisdictional prerequisites by a preponderance of the evidence. *Smith v. Nationwide Prop. &*

*Cas. Ins. Co.*, 505 F.3d 401, 404–05 (6th Cir. 2007) (quoting *Brown v. Jackson Hewitt, Inc.*, No.

1:06-cv-2632, 2007 WL 642011, at *2 (N.D. Ohio Feb. 27, 2007)).

Once the case has been removed, the plaintiff may contest federal jurisdiction by making

a timely motion to remand based on one of CAFA's several exceptions. Three such exceptions

are relevant to this case—namely, the "home state" exception, the "local controversy" exception,

and the "discretionary" exception. 28 U.S.C. § 1332(d)(3)–(4). Among other things, these

exceptions require that a certain proportion of the plaintiff class must be citizens of the forum

state.[1] *Id.* As the party seeking to defeat federal jurisdiction, the plaintiff bears the burden of

establishing the applicability of an exception by a preponderance of the evidence. *See In Re*

*Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010) (stating that the plaintiffs bear the burden

of demonstrating the applicability of the home state exception by preponderance of the

evidence); *Preston v. Tenet Healthsystem Mem'l Med. Ctr. Inc.*, 485 F.3d 793, 797 (5th Cir.

2007) (stating that the party seeking remand must prove the applicability of an exception to

CAFA by a preponderance of the evidence); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024

(9th Cir. 2007) (stating that "the objecting party bears the burden of proof as to the applicability

of any express statutory exception under [CAFA]"); *Evans v. Walter Indus.*, 449 F.3d 1159, 1164

(11th Cir. 2006) (stating that "when a party seeks to avail itself of an express statutory exception

to federal jurisdiction granted under CAFA… the party seeking remand bears the burden of proof

with regard to that exception.").

---

[1] For the home state and local controversy exceptions, at least two thirds of the plaintiff class must be citizens of the forum state. 28 U.S.C. § 1332(d)(4). For the discretionary exception, only one third of the plaintiff class must be citizens of the forum state. *Id.* § 1332(d)(3).

Generally, ambiguities related to the propriety of removal are strictly construed against the exercise of federal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941); *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549–50 (6th Cir. 2006). However, when a plaintiff moves for remand based on an exception to CAFA, this presumption is reversed because legislative history reflects that "the overall intent of [CAFA] is to strongly favor the exercise of federal… jurisdiction over class actions with interstate ramifications." S. Rep. No. 109-14, at 34 (2005); *see also Evans*, 449 F.3d at 1163 (stating that "Congress intended the local controversy exception to be a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case.'" (quoting S. Rep. No. 109-14, at 34)). Thus, once the defendant has established the requirements necessary for removal under CAFA, any doubts regarding the applicability of an exception to CAFA must be resolved by denying the plaintiff's motion to remand and retaining jurisdiction.

## DISCUSSION

There are two issues that require the Court's attention. The first issue is whether the Defendants have satisfied their burden of establishing that removal of this case was proper under CAFA. Assuming that removal was proper, the second issue is whether the Plaintiffs' Motion to Remand must be granted because this case falls within an exception to CAFA.

In order to justify removal under CAFA, the Defendants bear the burden of establishing that this case involves a class action in which 1) at least one plaintiff is a citizen of a state that is different from the state of citizenship of at least one defendant; 2) the proposed plaintiff class (or classes) contain(s) at least 100 members in the aggregate; and 3) the amount in controversy exceeds five million dollars. 28 U.S.C. § 1332(d)(2); *id.* § 1332(d)(5)(B). The Plaintiffs do not dispute that their proposed classes contain greater than 100 persons in the aggregate. *See* (Mot. to

Remand, DN 18-1, at 7–9). However, the Plaintiffs argue that the Defendants have failed to establish that minimal diversity exists among the parties and that the amount in controversy exceeds five million dollars. (Mot. to Remand at 7–9). For the reasons set forth below, the Court concludes that the Defendants have adequately satisfied their burden of demonstrating that the minimal-diversity and amount-in-controversy requirements have been satisfied.

Under CAFA, minimal diversity requires only that at least one plaintiff is a citizen of a state that is different from the state of citizenship of at least one defendant. 28 U.S.C. § 1332(d)(2)(A). Given that the the four representative plaintiffs are all citizens of Kentucky,[2] the minimal diversity requirement will be satisfied so long as at least one defendant is a citizen of a state other than Kentucky. As the pleadings make clear, Defendant CSX Transportation, Inc., is a citizen of Virginia and Florida, (Compl., DN 1-1, at ¶ 23), and Defendant P&L Transportation, Inc., is a citizen of Delaware, (Compl. at ¶ 20). Thus, the minimal diversity requirement has clearly been satisfied.

The Plaintiff's next argument merits more attention. According to the Plaintiffs, the Defendants have failed to establish that the amount in controversy exceeds five million dollars. (Mot. to Remand, DN 18-1, at 8–9). Because the Plaintiffs' Complaint does not specify the amount of damages they seek to recover,[3] the burden rests with the Defendants to produce other evidence establishing that the amount-in-controversy requirement has been satisfied. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) (holding that where plaintiff's complaint seeks recovery of an unspecified amount of damages, the burden is on defendant to prove the threshold

---

[2] In their Motion to Remand, the Plaintiffs represent that the four representative class members are Kentucky citizens. (Mot. to Remand at 8). At no point have the Defendants contested this assertion.
[3] This is because the Kentucky Rules of Civil Procedure provide that "In any action for unliquidated damages the prayer for damages in any pleading shall not recite any sum as alleged damages…" Ky. R. Civ. P. 8.01(2); *Egan v. Premier Scales & Sys.*, 237 F.Supp.2d 774, 777 (W.D. Ky. 2002) (stating that Kentucky "has enacted a law that prohibits the plaintiff from making a specific monetary demand, over and above the state's minimal amount in controversy.").

jurisdictional amount by a preponderance of the evidence). However, this burden is "a moderate burden that… does not place upon the defendant the daunting burden imposed by the legal certainty test, to research, state, and prove the plaintiff's claim for damages." *McCraw v. Lyons*, 863 F.Supp. 430, 434 (W.D. Ky. 1994) (citing *Gafford*, 997 F.2d at 159). Rather, the defense is entitled to rely on a "fair reading" of the allegations set forth in the complaint, *see Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001), meaning that the amount in controversy may be established by drawing reasonable inferences based on the nature and extent of the damages requested in the complaint. *See Agri-Power, Inc. v. Majestic JC, LLC*, No. 5:13–CV–00046–TBR, 2013 WL 3280244, at *3 (W.D. Ky. June 27, 2013) (evaluating the amount in controversy by looking to the nature and extent of the compensatory and punitive damages requested by plaintiffs); *Shupe v. Asplundh Corp.*, No. 5:12–CV–286–KKC, 2013 WL 647504, at *2 (E.D. Ky. Feb. 21, 2013) (same); *J.T. Carneal v. Travelers Cas. Ins. of America*, No. 5:12–CV–00174, 2013 WL 85148, at *2 (W.D. Ky. Jan. 7, 2013) (same).

In the case at bar, the Defendants have adequately satisfied their burden of demonstrating that the nature and extent of the damages requested by the Plaintiffs makes it more likely than not that the amount in controversy exceeds five million dollars. In their Complaint, the Plaintiffs request compensatory damages for personal injuries, property damage, and economic losses, as well as an injunction requiring the Defendants to "make safe Plaintiffs' property and places of business." (Compl., DN 1-1, at p. 13). Given that these damages are sought on behalf of thousands of class members, and considering that the injunction will probably require the Defendants to spend substantial sums of money restoring the Plaintiffs' property,[4] the amount in

---

[4] Although the parties have not provided any definitive evidence regarding the cost of compliance with the injunction, the Defendants estimate that it will require them to remediate approximately eighty square miles of the area surrounding the derailment site. (Def.'s Opp'n to Pl.'s Mot. to Remand, DN 24, at 6). In light of the substantial

controversy will likely exceed five million dollars based on these remedies alone. However, even if the compensatory damages and the injunction are not themselves sufficient, the fact that the Plaintiffs have also requested punitive damages no doubt places the amount in controversy well above the five-million-dollar threshold. (Compl. at p. 13). "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered... unless it is apparent to a legal certainty that such cannot be recovered." *Hayes*, 266 F.3d at 572 (quoting *Holley Equip. Corp. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987)) (alteration in original). Because Kentucky law permits the recovery of punitive damages in tort actions, *see* KRS 411.184(2), the Plaintiffs could recover an amount of damages far in excess of the amount of compensatory damages they are awarded.[5] Even assuming a conservative punitive-to-compensatory damages ratio of 2:1, the amount of the Plaintiffs' compensatory damages would only have to be $1,666,667 in order for the amount in controversy to exceed five million dollars. Thus, under any accepted meaning of the phrase, a "fair reading of the complaint" reveals that the amount in controversy will more likely than not exceed five million dollars.

This is especially true considering the similarity of this case with other train-derailment cases that have *settled* for as much as seven and eight million dollars. *See* Class Action Settlement Agreement, *Mehl v. Can. Pac. Ry.*, No. 4:02-cv-00009 (D.N.D. July 10, 2007) (settlement of over seven million dollars); *In re Train Derailment Near Amite, La.*, No. 2:03-md-01531, 2006 WL 1561470, at *4 (E.D. La. May 24, 2006) (settlement of over eight million dollars, not including the plaintiffs' property damage claims). Although these cases were no

_____

property damages alleged by the Plaintiffs, (Compl., DN 1-1, at p. 13), the Court concludes that the cost of complying with this injunction deserves consideration in estimating the amount in controversy.
[5] To date, the Supreme Court has recognized the constitutionality of a punitive-to-compensatory damages ratio approaching 4:1. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U .S. 408, 424–26 (2003).

doubt different from the case at bar,[6] the high value of these settlements nevertheless provides further support for the inference that the amount in controversy in this case will likely exceed five million dollars.

Because the Court has already concluded that the other requirements for removal have been satisfied, the Defendants have successfully established that removal of this case was proper under CAFA. Thus, the only remaining issue is whether the Plaintiffs may defeat federal jurisdiction based on an exception to CAFA. There are three relevant exceptions: the home state exception, the local controversy exception, and the discretionary exception. The Plaintiffs seek to establish the applicability of each of these exceptions, while the Defendants contend that none are applicable. For the following reasons, the Court concludes that none of the exceptions are applicable and that the Plaintiffs' Motion to Remand must be denied.

First and foremost, the Plaintiffs have failed to satisfy their burden of establishing that the requisite proportion of plaintiff class members are citizens of Kentucky. As discussed above, each of CAFA's exceptions requires that a certain proportion of the plaintiff class members are citizens of the forum state.[7] Because the citizenship of the plaintiff class members is calculated on an aggregate basis, with the members of every proposed class taken into account, *see In re Sprint Nextel Corp.*, 593 F.3d 669, 672 (7th Cir. 2010), the existence of one class with a disproportionate number of non-forum-state citizens could preclude otherwise qualified classes from being able to satisfy the citizenship requirement. Indeed, although the Plaintiffs have

---

[6] Perhaps the most important differences involve the types of chemicals released into the environment. In *Mehl*, the primary chemical at issue was anhydrous ammonia. *See* Class Action Settlement Agreement, *Mehl*, No. 4:02-cv-00009, at 3. In *Amite*, the primary chemicals were hydrochloric acid and styrene monomer. *See In re Amite*, 2006 WL 1561470, at *6. Despite their differences, these actions were nevertheless similar to the present action in that the plaintiffs sought to recover for personal injuries, property damage, and economic losses which they claimed were caused by the release of the chemicals into the environment. *See id.*; Class Action Settlement Agreement, *Mehl*, No. 4:02-cv-00009, at 3.

[7] For the home state and local controversy exceptions, at least two thirds of the class members must be citizens of the forum state. For the discretionary exception, only one third of the class members must be citizens of the forum state.

adequately demonstrated that their proposed classes "Class I" and "Class II" are composed of more than two thirds Kentucky citizens, the extraordinary number of non-Kentucky citizens in "Class III" precludes them from satisfying the citizenship requirement with respect to their proposed classes as a whole. As defined by the Plaintiffs, Class III includes "All businesses and commercial entities affected by the train derailment," (Compl., DN 1-1, at ¶ 27), and thus in no way restricts the geographic scope of the businesses or commercial entities that it potentially encompasses.[8] Considering that the train derailment required local authorities to completely stop maritime traffic on the Ohio River, establish of a no-fly zone in the surrounding airspace, and temporarily close a nearby state highway, (Compl. at ¶ 12), there are potentially thousands, if not tens of thousands, out-of-state businesses and commercial entities that may fairly be said to have been "affected by the train derailment." Thus, despite the fact that Class I and Class II may individually satisfy the citizenship requirement, the addition of the out-of-state class members in Class III renders the aggregate proportion of Kentucky-citizen to non-Kentucky-citizen class members well below the threshold necessary to defeat federal jurisdiction under CAFA's exceptions.[9]

---

[8] Although it may seem odd that the citizenship of putative class members who are not presently involved in the case would be considered in determining whether the citizenship requirement has been satisfied, this is the approach taken by the cases. *See In re Sprint Nextel Corp.*, 593 F.3d 669, 672 (7th Cir. 2010) (analyzing the citizenship requirement by looking to "the total number of *potential* class members…") (emphasis added); *Leathermon v. Grandview Mem'l Gardens, Inc.*, 4:07–CV–137–SEB–WGH, 2009 WL 301923, at *4 (S.D. Ind. Jan. 22, 2009) (denying motion to remand for failure to satisfy two-thirds citizenship requirement because "the number of class members yet unaccounted for remains unclear…"); *Nichols v. Progressive Direct Ins. Co.*, No. 06-146-DLB, 2007 WL 1035014, at *3 (E.D. Ky. Mar. 31, 2007) (denying motion to remand for failure to satisfy two-thirds citizenship requirement because the proposed class period was five years and it would be "sheer speculation" for the court to conclude that two thirds of the class members remained citizens of the state throughout that period). Thus, the Plaintiffs argument that Class III does not include any out-of-state business because none have yet "filed claims with the Defendants," (Mot. to Remand, DN 27, at 9), is wholly irrelevant to the Court's calculation of the citizenship of the plaintiff classes.

[9] It should be noted that, in their reply brief, the Plaintiffs' request leave to amend their Complaint in order to redefine "Class III" such that these out-of-state class members are excluded. (Reply in Supp. of Mot. to Remand, DN 27, at 9–10). However, the Plaintiffs have not formally moved for leave to amend.

To illustrate, consider the following mathematical demonstration. Assuming that the Plaintiffs' residency, migration, and mobility data accurately reflects the citizenship of the class members in Class I and Class II, these classes would consist of approximately 4,144 Kentucky citizens and 669 Indiana citizens.[10] If we then assume that at least 500 Kentucky businesses were "affected by the train derailment"[11] and therefore fall within Class III, there would only have to be as little as 1,653 out-of-state businesses or commercial entities "affected by the train derailment" in order for the aggregate proportion of Kentucky-citizen to non-Kentucky citizen class members to fall below the two-thirds threshold required by the home state and local controversy exceptions. Although this number jumps to approximately 8,619 when considering the one-third threshold of the discretionary exception, the fact that the train derailment had such a huge impact on both the channels and instrumentalities of interstate commerce makes it probable that greater than this number of out-of-state businesses were "affected by the train derailment."[12] In any case, because the Plaintiffs bear the burden of proving that the citizenship requirement has been satisfied, *see In Re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010), their failure to negate the possibility that their proposed classes include these out-of-state businesses precludes them from defeating federal jurisdiction based on CAFA's exceptions.

Assuming *arguendo* that the Plaintiffs' were able to successfully establish the citizenship requirement, the Plaintiffs would nevertheless be unable to satisfy the remaining requirements of

---

[10] In their Motion to Remand, the Plaintiffs provide extensive statistical evidence concerning the residency, migration, and mobility of the class members included in "Class I" and "Class II." The Plaintiffs' data suggests that approximately 4,881 persons included in Class I and Class II are residents of Kentucky and that, of these, 4,144 are likely citizens of Kentucky based on the migration and mobility data. (Mot. to Remand, DN 18-1, at 13). With respect to the Indiana class members, the Plaintiffs' data suggests that there are approximately 727 residents of Indiana and that, of these, 669 are likely citizens of Indiana based on the migration and mobility data. (Mot. to Remand at 13).

[11] In the Plaintiffs' own statistical calculations, they begin with the assumption that only 194 area businesses were affected by the train derailment. (Reply in Supp. of Mot. to Remand, DN 27, at 9). Thus, the assumption that over 500 Kentucky businesses were affected by the train derailment is a generous one.

[12] The effect of the train derailment on these out-of-state businesses could presumably take a variety of forms, but most likely consisted primarily of delayed shipments of goods, equipment, and other materials necessary for business, as well as delayed transportation of personnel.

CAFA's exceptions. For instance, in addition to the two-thirds citizenship requirement, the home state exception requires that "the primary defendants… [must be] citizens of the State in which the action was originally filed."[13] Because the term "primary defendants" is not defined in CAFA, courts have relied primarily on CAFA's legislative history in discerning its meaning. *See Meiman v. Kenton County, Ky.*, No. 10–156–DLB, 2011 WL 350465, at *5 (E.D. Ky. Feb. 2, 2011) (concluding that "CAFA's legislative history is relevant" to interpreting the term primary defendants because "[n]either CAFA nor… the Sixth Circuit has defined… 'primary defendants…'"); *Kendrick v. Standard Fire Ins. Co.*, No. 06-141-DLB, 2007 WL 1035018, at *5 (E.D. Ky. Mar. 31, 2007) (same). Although the Sixth Circuit has yet to address the issue, other federal district courts in Kentucky have identified two independently sufficient requirements for qualifying as a primary defendant. According to these courts, a primary defendant must be either 1) directly liable to the plaintiff class, rather than merely vicariously or secondarily liable, *see Meiman*, 2011 WL 350465, at *8 (holding that the defendants were primary defendants because they were "being sued directly"); *Adams v. Fed. Materials Co., Inc.*, No. 5:05CV-90-R, 2005 WL 1862378, at *5 (W.D. Ky. July 28, 2005) (same); or 2) liable to a substantial portion of the plaintiff class members. *See Kendrick*, 2007 WL 1035018, at *5 (stating that "primary defendants are those believed to be liable to the vast majority of the class members."). In the case at bar, Defendants CSX Transportation, Inc., Center for Toxicology and Environmental Health, LLC, and P&L Transportation, Inc., undoubtedly qualify as primary defendants to the extent that the Plaintiffs seek to hold them *directly* liable for the injuries suffered by *every* member of the plaintiff class. *See* (Compl., DN 1-1, at ¶¶ 32–53). As previously discussed, none of these

---

[13] This language has been interpreted to require that *all* of the primary defendants must be citizens of the state in which the action was originally filed. *See Meiman v. Kenton County, Ky.*, No. 10–156–DLB, 2011 WL 350465, at *8 (E.D. Ky. Feb. 2, 2011) (stating that "the plain language of CAFA requires that *all* of the primary defendants" must be citizens of the state in which the action is filed"); *Kendrick v. Standard Fire Ins. Co.*, No. 06-141-DLB, 2007 WL 1035018, at *5 (E.D. Ky. Mar. 31, 2007) (stating that "*all* of the primary defendants must be residents of the home state.") (emphasis added).

Defendants are citizens of Kentucky. *See* (Compl. at ¶¶ 20, 22–23). Therefore, even if the

Plaintiffs were able to establish that two thirds of their proposed class members were citizens of

Kentucky, they would nevertheless be unable to satisfy the requirements of the home state

exception because the primary defendants are not citizens of Kentucky.

The Plaintiffs are likewise unable to satisfy the additional requirements of the local

controversy exception. In addition to the two-thirds citizenship requirement, the local

controversy exception requires that "at least one defendant… from whom significant relief is

sought… [and] whose alleged conduct forms a significant basis for the claims asserted by

proposed plaintiff class" must be a "citizen of the State in which the action was originally filed,"

28 U.S.C. § 1332(d)(4)(A)(i)(II), and that the "principal injuries resulting from the alleged

conduct… were incurred in the State in which the action was originally filed." *Id.* §

1332(d)(4)(A)(i)(III). Without deciding whether the significant-basis and significant-relief

requirements have been satisfied, the Court concludes that the Plaintiffs are unable to take

advantage of the local controversy exception because they have failed to establish that the

"principal injuries resulting from the alleged conduct" were incurred exclusively in Kentucky.

Like the term "primary defendants," the term "principal injuries" is not defined in CAFA,

leaving courts to interpret it based on CAFA's legislative history. In doing so, courts have

focused on the following excerpt from the Senate Report:

> By [principal injuries], the Committee means that all or almost all of the damage
> caused by defendants' alleged conduct occurred in the state where the suit was
> brought. The purpose of this criterion is to ensure that this exception is used only
> where the impact of the misconduct alleged by the purported class is localized…
> [I]f the defendants engaged in conduct that could be alleged to have injured
> consumers throughout the country or broadly throughout several states, the case
> would not qualify for this exception, even if it were brought only as a single-state
> class action....

S. Rep. No. 109-14, at 40 (2005). Based on this language, courts have interpreted the principal-injuries requirement as relating primarily to the *geographic scope* of the injuries suffered by the plaintiff class. *See Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006) (holding local controversy exception applicable because "the principal injuries… were incurred in New York."); *Kearns v. Ford Motor Co.*, No. CV 05-5644 GAF(JTLX), 2005 WL 3967998, at *12 (C.D. Cal. Nov. 21, 2005) (holding local controversy exception inapplicable because "the principal injuries alleged… [were] not limited to California…"). With this understanding, it becomes clear that the Plaintiffs cannot satisfy the principal-injuries requirement. Given that Class II includes at least 700 Indiana residents and that Class III encompasses "All businesses and commercial entities affected by the train derailment," (Compl., DN 1-1, at ¶ 27), the Plaintiffs' injuries are in no way limited to Kentucky. Clearly, therefore, this is not a case where "all or almost all of the damage caused by the defendants' alleged conduct occurred in [Kentucky]…" S. Rep. No. 109-14, at 40. For these reasons, the Plaintiffs have failed to establish that the principal injuries were incurred exclusively in Kentucky and the local controversy exception is therefore inapplicable.

The final exception relied on by the Plaintiffs is the so-called "discretionary" exception. Unlike the home state and local controversy exceptions, the discretionary exception requires only one third of the members of the plaintiff class to be citizens of the forum state. 28 U.S.C. § 1332(d)(3). In addition, all primary defendants must citizens of the state where the action was originally filed and the court must be persuaded that remand is appropriate based on the discretionary factors set forth in 28 U.S.C. § 1332(d)(3)(A)–(F). *Id.* For reasons already discussed, the Plaintiffs are unable to satisfy these requirements. To begin with, it is highly unlikely that one third of the plaintiff class members are Kentucky citizens. Furthermore, even if

the one-third citizenship requirement were satisfied, the fact that none of the primary defendants are citizens of Kentucky is itself sufficient to render the discretionary exception inapplicable. Thus, regardless of whether the discretionary factors weigh in favor of remand, the Plaintiffs cannot rely on the discretionary exception as a means of defeating federal jurisdiction.

It follows from the foregoing discussion that the Plaintiffs' Motion to Remand must be denied. The Defendants have successfully established the jurisdictional requirements necessary for removal under CAFA, whereas the Plaintiffs have failed to satisfy their burden of establishing the applicability of an exception to CAFA. For these reasons, jurisdiction is properly vested in this Court and the Plaintiffs' Motion to Remand will be denied by separate order.

September 16, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**