UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| SUSAN E. MORGAN | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICHAEL C. SMITH, on behalf of | ) | |
| themselves and a class of similarly | ) | |
| situated plaintiffs | ) | |
| | ) | |
| | ) | |
| PLAINTIFFS | ) | ***ELECTRONICALLY FILED*** |
| | ) | |
| vs. | ) | Civil Action No.: 3:12-cv-818-CRS |
| | ) | |
| | ) | |
| PADUCAH & LOUISVILLE RAILWAY, | ) | |
| INC.; P&L TRANSPORTATION, INC.; | ) | |
| R.J. CORMAN DERAILMENT | ) | |
| SERVICES, LLC; CENTER FOR | ) | |
| TOXICOLOGY AND ENVIRONMENTAL | ) | |
| HEALTH, LLC; | ) | |
| CSX TRANSPORTATION, INC., FOUR | ) | |
| RIVERS TRANSPORTATION, INC. | ) | |
| RAE SYSTEMS, INC., AND | ) | |
| HONEYWELL INTERNATIONAL, INC. | ) | |

DEFENDANTS

** ** ** ** **

## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Susan E. Morgan and Michael C. Smith, by counsel, for their First Amended

Complaint against the Defendants Paducah & Louisville Railway Inc., P&L Transportation, R.J.

Corman Derailment Services, LLC, Center for Toxicology and Environmental Health, LLC,

CSX Transportation, Four Rivers Transportation, Inc., RAE Systems, Inc., and Honeywell

International, Inc. (hereinafter "Defendants"), state as follows:

## INTRODUCTION

1.      This is a class action complaint, pursuant to Kentucky Rule of Civil Procedure 23 and 28 U.S.C. § 1332, seeking monetary damages and injunctive relief from Defendants arising from a train derailment on Oct. 29, 2012, near West Point, Ky.

2.      At all relevant times, Defendants were the owners and/or operators of a 265-mile regional railroad stretching between the Kentucky cities of Paducah and Louisville along the Ohio River, and/or participating in or connected to the clean-up operations for the aforementioned derailment.

3.      Defendants Paducah and Louisville Railway, Inc., P&L Transportation, Four Rivers Transportation, Inc., and CSX Transportation provide rail service to more than 90 different industries, carrying about 200,000 railcar loads annually.

4.      On or about Oct. 29, 2012, a train with fifty-seven railcars was carrying toxic chemicals along a track owned and operated by Defendants Paducah and Louisville Railway, Inc., P&L Transportation, Four Rivers Transportation, Inc., and CSX Transportation, near West Point, Ky., in southwest Jefferson County along U.S. 31, commonly known as Dixie Highway.

5.      Thirteen of the fifty-seven cars on the train derailed, sending large quantities of hazardous chemicals, including deadly butadiene and hydrogen fluoride, into the environment around the derailment site.

6.      Thirty-two of the cars were carrying hazardous chemicals, including nine that derailed or were damaged in the disaster.

7.      The cause of the derailment includes, but is not limited to, a broken or defective rail on the railway owned by Defendants.

8.     Chemicals released into the surrounding air and water included at least 11,464 pounds of styrene, and at least 162,652 pounds of 1,3-butadiene.

9.     The U.S. Environmental Protection Agency classifies styrene as a toxin that poses hazards to the gastrointestinal tract, the kidneys, and respiratory system. It also has carcinogenic properties.

10.     Documents submitted by Defendants to the Superfund branch of the Kentucky Department for Environmental Protection describe styrene as "very toxic," possibly carcinogenic to humans, and a source of "severe irritation" if inhaled.

11.     The U.S. Environmental Protection Agency classifies 1,3-butadiene as a carcinogen that can result in neurological effects including blurred vision, fatigue, and headaches in the short term, and leukemia and cardiovascular disease in the long term.

12.     Documents submitted by Defendants to the Superfund branch of the Kentucky Department for Environmental Protection describe 1,3-butadiene as carcinogenic to humans, as well as posing a cancer hazard to humans,  and a source of dizziness, nausea, depression of the central nervous system and irritation of the respiratory system.

13.     Defendant Paducah & Louisville Railway, Inc., told members of the Louisville Metro Council as recently as September 5, 2013, that unsafe levels of 1,3-butadiene were present in the groundwater and subsurface soil near the disaster area.

14.     Because of the unsafe levels of these and other chemicals, Defendants are being asked to submit cleanup plans to the Superfund branch of the Kentucky Department for Environmental Protection.

15.     The cleanup plan for the property near the derailment will require at least five years of monitoring, according to documents submitted by Defendants to the Louisville Metro Council.

16.     Two days after the initial derailment, at approximately 1 p.m. on Wednesday, Oct. 31, 2012, workers for Defendant RJ Corman using acetylene torches ignited the chemicals, causing a massive explosion that seriously injured three people and started a massive fire that lasted for more than twenty-four hours.

17.     The explosion happened after workers for Defendant CTEH failed to ensure the proper calibration of gas detection devices manufactured by Defendant RAE Systems, Inc., which in turn is a subsidiary of Defendant Honeywell International, Inc.

18.     The workers who ignited the fire were employed by Defendants and/or companies hired by Defendants to remove toxic chemicals and rail cars from the site of the disaster, and they were working under the direction and guidance of Defendants, including but not limited to the Center for Toxicology and Environmental Health, LLC, at the time of the explosion.

19.     The derailment and subsequent explosions forced the evacuation of the entire city of West Point, Ky., including nearly all of the city's approximately 900 residents, as well as hundreds of other area residents within a 1.2 mile radius of the derailment site in Jefferson and Hardin counties.

20.     The first evacuation lasted approximately five days, and ended on Sunday, Nov. 4, 2012. Those affected by the evacuation order had to stay in hotels or with relatives, and many did not have adequate clothing or food for a five-day evacuation.

21.     Additional residents and businesses within a five-mile radius of the derailment site on the Kentucky side of the Ohio River were told by law enforcement officials to remain

inside their homes and buildings due to fears about chemical contamination and other safety hazards.

22.     Other residents and businesses outside the five-mile radius of the derailment site also were affected by the disaster due to the closure of Dixie Highway and other roadways.

23.     A second evacuation affecting dozens of homes took place approximately one week later, and lasted two days, while cleanup crews removed the railcars. During this time all commerce was stopped along the Ohio River, and a no-fly zone was put in place above the area for commercial aircraft. Dixie Highway and surrounding roads also were closed again, and they did not open until Nov. 20, 2012.

24.     The chemicals released by the derailment, including butadiene, hydrogen fluoride, and styrene, are highly flammable, corrosive, and ultra-hazardous. These toxic chemicals pose health hazards to people and businesses in the affected areas in Kentucky, and can lead to illnesses with side effects to the respiratory and reproductive systems, and to the central nervous system.

25.     Officials with the Louisville Metro Emergency Management Agency expressed particular concern about the effects of the leaking hydrogen fluoride and other chemicals on the community and surrounding neighborhoods. Many of the residents of West Point drink well water, and long-term contamination of this water poses a serious health threat.

**PARTIES, JURISDICTION AND VENUE**

26.     Susan E. Morgan is a resident and citizen of the Commonwealth of Kentucky, residing at 307 Lillie Lewis Way, West Point, Kentucky 40177. She was forced to evacuate her home for a total of seven days during both the first and second evacuations. In addition, she suffered physical injuries and fright from the chemical spill including emotional distress, fear,

anxiety, difficulty breathing, irritation of the eyes, and aggravation of her asthma and allergies, for which she sought medical treatment in the weeks following the derailment disaster. She brings this action on behalf of herself individually, and on behalf of a class of persons similarly situated as described in the classes below.

27.     Michael C. Smith is a resident and citizen of the Commonwealth of Kentucky, residing at 504 Elm Street, West Point, Kentucky, 40177 in Hardin County. He also is the sole owner of Mike Smith Truck Parts, which has its principal place of business at 2301 Main Street, West Point, Kentucky, 40177. He was forced to evacuate his home for a period of five days, and he drove an estimated 700 additional miles during this period due to road blocks and street closures in and around the West Point area. In addition, his business, Mike Smith Truck Parts, suffered financial losses including the cancellation of certain equipment sales, during and after the evacuation. He brings this action on behalf of himself individually, and on behalf of a class of persons similarly situated as described in the classes below.

28.     Plaintiffs Morgan and Smith bring this action in their own right and on behalf of all others similarly situated.

29.     Paducah & Louisville Railway, Inc., is incorporated in Kentucky with its principal place of business in Paducah, Kentucky.

30.     P & L Transportation, Inc. ("P&L"), is incorporated in Delaware and has its principal place of business in Paducah, Kentucky.

31.     R.J. Corman Derailment Services, LLC ("Corman") is incorporated in Kentucky with its principal place of business in Nicholasville, Kentucky.

32.     Center for Toxicology and Environmental Health, LLC ("CTEH") is incorporated in Arkansas with its principal place of business in Little Rock, Arkansas.

33. CSX Transportation ("CSX") is incorporated in Virginia with its principal place of business in Florida.

34. Four Rivers Transportation, Inc., ("Four Rivers") is incorporated in Delaware with its principal place of business in Delaware.

35. RAE Systems, Inc., ("RAE") is incorporated in Delaware with its principal place of business in California.

36. Honeywell International, Inc., ("Honeywell") is incorporated in Delaware with its principal place of business in New Jersey.

37. This Court has jurisdiction over both the parties and the subject matter under 28 U.S.C. § 1391. A substantial number of the events giving rise to this complaint occurred in Jefferson and Hardin counties. One or more Defendants do a substantial amount of business in the Commonwealth of Kentucky and within this District, and receive substantial compensation and profits in this District.

## CLASS ALLEGATIONS

38. A class action is the proper form to bring plaintiffs' claims under Federal Rule of Civil Procedure 23 and 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the matter in controversy exceeds $5 million exclusive of interest and costs, and is a class action in which some members of the Class are citizens of a state different than some Defendants. The potential classes are so large that joinder of all members would be impracticable. For example, an expert study using data from the U.S. Census Bureau shows that approximately 5,608 people live in the geographic area covered by the definition of the proposed class. Additionally, there are questions of law or fact common to the class, the claims or defenses

of the representative parties are typical of the claims or defenses of the classes, and the representative parties will fairly and adequately protect the interests of the classes.

39.     This action satisfies all of the requirements of Kentucky Rule of Civil Procedure 23 and 28 U.S.C. § 1332, including numerosity, commonality, typicality, adequacy, predominance and superiority.

40.     The proposed Class is described as follows:

> All persons, persons who own property and businesses and commercial entities located within a 5-mile radius of the site of the derailment.

41.      Plaintiffs reserve the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

42.     Plaintiffs will fairly and adequately protect the interests of the class. The interests of the class representatives are consistent with those of the other members of the class. In addition, the Plaintiffs are represented by experienced and able counsel who have expertise in the areas of railroad law, environmental law, tort law, product liability law, trial practice, and class action representation.

43.     The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

44.     Excluded from the Class are:

a.     Defendants and any entities in which Defendants have a controlling interest;

b.     Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants;

c.     The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.      All persons or entities that properly execute and timely file a request for exclusion from the Class;

e.      Any attorneys representing the Plaintiff or the proposed Class.

## COUNT I – NUISANCE

45.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

46.     Plaintiff Susan E. Morgan has an ownership or possessory interest in real property in West Point, Kentucky, that lies within the proposed geographic boundaries of the above defined class.

47.     Plaintiff Michael C. Smith has an ownership or possessory interest in real property in West Point, Kentucky, that lies within the proposed geographic boundaries of the above defined class.

48.     Through their acts and omissions in allowing toxic and hazardous substances to enter upon Plaintiffs' property and the property of the proposed class, the Defendants have created a nuisance upon such property that injured Plaintiff and members of the proposed class.

49.     By allowing toxic and hazardous substances and fumes to enter the air, water, and soil surrounding the disaster site, Defendants caused harm to Plaintiffs' property and the property of the proposed class, and forced the evacuation of Plaintiffs and the proposed class members from their homes, and forced Plaintiffs and the proposed class members to shelter in place so that they could not leave their homes.

50.     The nuisance has negatively affected the life and health of Plaintiffs and of the proposed class, interfering with the comfortable use and enjoyment of life and property, has diminished Plaintiffs' and the proposed class members' lives, has caused the Plaintiffs and the

proposed class members economic injury in the form of lost fair market value and lost rental value, and has thereby created a common-law nuisance, liability for which attaches to the Defendants for causing the nuisance.

51.     As an example of the lost value of proposed class members, Plaintiff Susan E. Morgan states the following additional facts:

a.   Plaintiff Susan E. Morgan owns real property at 307 Lillie Lewis Way in West Point, Kentucky, which she uses as her primary residence.

b.   The derailment forced Plaintiff Morgan to evacuate her property for a period of seven days.

c.   The fair market rental value of Plaintiff Morgan's primary residence is approximately $400 per month.

d.   During this period of time, Plaintiff Morgan had no access to her property or possessions at 307 Lillie Lewis Way.

e.   In addition to being prevented access to her property, Plaintiff Morgan experienced emotional distress, fear, anxiety, difficulty breathing, irritation of the eyes, and aggravation of her asthma and allergies, for which she sought medical treatment in the weeks following the derailment disaster.

f.   The physical and mental symptoms suffered by Plaintiff Morgan are substantially similar to the symptoms described by Defendants for humans who are exposed to chemicals spilled in the derailment, including styrene and 1,3-butadiene.

g.   Plaintiff Morgan has received no reimbursement from Defendants for

any of the above losses.

h.  But for the train derailment caused by Defendants, Plaintiff Morgan

would not have suffered the losses in fair market rental value, emotional

distress, fright and physical iniury that she endured due to the evacuation.

52.    As an example of the lost value of proposed class members, Plaintiff Michael C.

Smith states the following additional facts:

a.   Plaintiff Michael C. Smith owns real property at 504 Elm Street in

West Point, Kentucky, which he uses as his primary residence.

b.    The derailment forced Plaintiff Smith to evacuate this property for a

period of five days.

c.    The fair market rental value of Plaintiff Smith's primary residence is

approximately $1,000 per month.

d.    During this period of time, Plaintiff Smith had no access to his

property or possessions at 504 Elm Street.

e.    Plaintiff Smith also has a possessory interest in real property that he

leases at 2301 Main Street in West Point, Kentucky, for his business, Mike

Smith Truck Parts.

f.    During the evacuation and on subsequent days, Plaintiff Smith lost

substantial amounts of business revenue because he was unable to access

the inventory of his business on Main Street, and he was therefore unable

to complete planned business transactions with his customers.

g.    Even after nearly one year, Plaintiff Smith's business is still operating

at roughly 30 percent capacity compared to the period of time before the

derailment.

h.   But for the train derailment caused by Defendants, Plaintiff Smith's truck parts business would not have suffered the steep revenue declines that it has endured since late October 2012.

i.   Plaintiff Smith has received no reimbursement from Defendants for any of the above business-related losses.

53.     By reason of the foregoing, Plaintiffs and members of the proposed class have been damaged by the Defendants.

54.     Plaintiffs Morgan and Smith and members of the proposed class are entitled to be reimbursed for the damages they have suffered, to the extent they have not received reimbursement from Defendants.

## COUNT II – TRESPASS

55.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

56.     The Defendants caused toxic and hazardous chemicals to escape containment and enter into areas of Jefferson and Hardin counties in Kentucky, including properties of Plaintiffs and members of the proposed class. As a result, Plaintiffs' property and the property of the proposed class members have been invaded by particulates of styrene, 1,3-butadiene and other chemicals which contaminate soil and water and cause injuries to humans. Those circumstances constitute trespass on the property and into dwelling places, soil and drinking water and a personal trespass upon Plaintiffs and members of the proposed class.

57.     As an example of the type of adverse physical reaction to the chemical spill from the disaster, Plaintiff Morgan suffered difficulty breathing, and aggravation of her asthma and

allergies, for which she sought medical treatment in the weeks following the derailment disaster.

58.     Representatives of Defendant Paducah & Louisville Railway, Inc., presented documents to the Louisville Metro Council as recently as September 5, 2013, showing that chemicals spilled in the disaster could pose health risks to exposed individuals as described above.

59.     The same documents from Paducah & Louisville Railway, Inc., show that 1,3-butadiene levels exceeded the EPA Regional Screening Level — at least 30 micrograms per liter in certain areas — and that the overall chemical spill may require five years of continued monitoring and restrictions in the area.

60.     Said trespass has adversely impacted the life and health of Plaintiffs and those similarly situated to them and has proximately harmed them, for reasons of which the Defendants are liable to Plaintiffs and the members of the proposed class.

61.     By reason of the foregoing, Plaintiffs and members of the proposed class have been damaged by Defendants.

## COUNT III – NEGLIGENCE

62.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

63.     Upon information and belief, at all times while the Defendants owned and/or operated said rail cars, and at all times while they operated said rail cars over the road on which the catastrophe occurred, Defendants knew or in the exercise of reasonable care should have known that the negligent operation of said rail cars, and/or of said road, could cause damage to Plaintiffs and class members. Defendants further knew that dangerous substances, including incendiary, toxic, and hazardous substances, chemicals, and particulates, were present which

were capable of causing human injury by igniting, spreading, and contaminating water, air, and soil in Hardin and Jefferson counties.

64.     In the process of operating their rail cars and the road over which the rail cars traveled, and in loading and handling large quantities of incendiary, toxic, and hazardous substances, the Defendants created foreseeable risks of harm to the Plaintiffs and members of the proposed class which Defendants knew or in the exercise of reasonable care should have known.

65.     Defendants Paducah & Louisville Railway, P&L, CSX and Four Rivers, through their employees and/or agents, hired Corman and CTEH to assist with the clean-up of the train derailment.

66.     Corman was authorized by Defendants to use an acetylene torch to cut through railroad cars, in violation of 298 C.F.R. § 1910.252(a)(2)(iv) and NFPA 51B.

67.     Corman was authorized by Defendants to use acetylene torches in an area that was not fire safe.

68.     Corman was authorized by Defendants to use acetylene torches in other respects that violated various state and federal guidelines.

69.     Defendants Corman failed to designate a competent person to determine that the area was gas-free and to take other necessary and reasonable precautions.

70.     Defendants authorized CTEH to monitor the atmosphere for toxic and hazardous gases and/or chemicals in the area surrounding the derailed rail cars.

71.     CTEH failed to adequately monitor the atmosphere as instructed, and/or failed to properly calibrate its monitoring equipment.

72.     CTEH failed to adequately inspect the monitoring equipment to ensure that it was properly functioning.

73.     The monitoring equipment used by CTEH was manufactured by RAE Systems, Inc., a subsidiary of Honeywell International, Inc.

74.     RAE and Honeywell were negligent in failing to design and manufacture gas-detection equipment that would perform its stated purpose.

75.     The above failures by CTEH, RAE, Honeywell, and other Defendants resulted in a massive explosion being caused by Corman workers using acetylene torches.

76.     The damages sustained by Plaintiffs Morgan and Smith and members of the proposed class are and were proximately caused by the negligence of the Defendants in failing to guard against and prevent the aforementioned foreseeable risks from materializing. The Defendants negligently operated the rail cars and/or the road where the catastrophe occurred and failed to take all due and proper measures to prevent the catastrophe from occurring, including taking measures to repair railroad ties which, on information and belief, were rotted, decayed, and otherwise compromised and not performing as designed.

77.     Defendants Paducah & Louisville Railway, P&L, CSX and Four Rivers failed to operate the cars and/or road in a safe manner and neglected to monitor for safety the operations of the cars and/or road.

78.     Defendants CTEH and Corman failed to properly monitor the atmosphere for toxic and hazardous gases, and/or failed to use reasonable care in working in and around the damaged rail cars.

79.     Plaintiffs Morgan and Smith and the class members were foreseeable victims of these negligent acts and omissions, and they sustained damages from the acts and omissions.

80.     The Defendants did not timely warn the Plaintiffs and members of the proposed class of the dangerousness of the catastrophe. Many hours lapsed before Plaintiffs and members

of the proposed class learned of the risks to health and property posed by the catastrophe. Earlier warnings would have prevented some or much of the injurious human exposure to the hazardous chemicals released by the derailment and fire.

81.     The members of the above class who were damaged include those living within five miles of the derailment site, as well as those who were present in the area when the derailment occurred, those who were forced to evacuate their homes or shelter in place, and those whose businesses suffered losses as a result of the disaster.

82.      The Defendants had a duty to warn arising in conscience, common law, and/or statutory rules, codes, and regulations. They breached that duty. The breach was wanton, willful, and/or grossly negligent. The failure to timely warn was carried out in reckless, conscious disregard of the potential for harm to others.

83.      The Defendants owed the Plaintiffs and members of the proposed class duties of care. Those duties of care are defined by common law and statutory rules, codes, and regulations. Defendants breached these duties defined by statute, code, rule, regulation and common law. The Defendants' breach of the duties proximately caused harm to the Plaintiffs and the class. The Plaintiffs and members of the proposed class  were damaged as a result, and they in no way contributed to the injuries and damages they sustained.

## COUNT V – STRICT LIABILITY

84.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

85.     Defendants Paducah & Louisville Railway, Inc., P&L, CSX and Four Rivers were the operators of rail cars, and repair contractors for railcars, that contained abnormally dangerous and/or extremely hazardous chemical and containments.

86.     Defendants CTEH and Corman are not operators of rail cars, but rather were involved in cleaning up the deadly chemicals and rail cars in the disaster, and/or monitoring the atmosphere for toxic and hazardous substances.

87.     By virtue of the styrene, 1,3-butadiene and other chemicals they contained, said rail cars were inherently dangerous and subject to combustion, explosion, and rupture, regardless of the precautions employed by Defendants.

88.     Cleaning up the deadly chemicals from the derailment disaster was a non-delegable duty.

89.     The Defendants could not conduct the operation or clean-up of the rail cars in complete safety, and the Plaintiffs and members of the proposed class were at risk of harm.

90.     As a direct and proximate result of Defendants' inherently dangerous, extremely hazardous and abnormally dangerous activities, the Plaintiffs and members of the proposed class have been damaged.

## COUNT VI - STRICT LIABILITY, MANUFACTURING AND DESIGN DEFECT

91.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

92.     Defendant RAE Systems, Inc., has been making and/or developing wireless monitoring devices since 1999.

93.     Gas monitoring detection devices made by RAE are used in civilian and government applications in more than 120 countries around the world.

94.     In 2012, RAE reported sales of $107 million with approximately 750 employees.

95.     In April 2013, Defendant Honeywell, Inc., announced an agreement to acquire RAE in a transaction valued at $340 million.

96.     The monitoring equipment used by CTEH at the scene of the chemical spill included certain machines manufactured by Defendants RAE and/or Honeywell including four "MultiRAE" machines with the following serial numbers: 095-528035, 095-528085, 095-52809, and 095-528082.

97.     Defendant RAE represents its portable gas detection equipment as "best in class" on its Website, and states that its equipment elevates the safety of workers and first responders, is "intrinsically safe" in hazardous atmospheres, and meets certain military and government safety guidelines.

98.     RAE furthermore warrants in a video on its Website that the MultiRAE family of portable gas detection devices represent a "quantum leap" in safety compared to devices made by competitors.

99.     The portable detection devices made by RAE and/or Honeywell were defective because they did not function properly at the site of the disaster following the train derailment.

100.    During testing of our MultiRAE devices following the derailment, two of the devices failed basic performance tests as illustrated in the results of an examination conducted at the offices of Defendant CTEH.

101.    Additionally, batteries did not function properly during the aforementioned testing, and calibration was not successful.

102.    As a direct and proximate result of Defendant's manufacturing defects, Plaintiffs and members of the proposed class have suffered, and will continue to suffer, damages as alleged herein.

## COUNT VII – RES IPSA LOQUITUR

103.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing

allegations as though fully set forth herein.

104.    The character of the incident made the basis of this complaint, including but not limited to the derailment and subsequent explosion, are such that they would not ordinarily occur without negligence.

105.    The broken rail and the defective and improperly calibrated MultiRAE device were under the exclusive control of Defendants up until and including the time that the derailment occurred and the explosion happened.

106.    Reasonable probabilities point to Defendants being the negligent parties that caused the derailment and the events leading up to and including the explosion.

107.    Defendants have superior knowledge and means of information to determine the cause of the incident made the basis of this lawsuit.

108.    By reason of the above and foregoing circumstances, the jury is permitted to infer Defendants' negligence.

109.    As a direct and proximate result of the negligence of Defendants, Plaintiffs and members of the proposed class have suffered and continue to suffer serious and permanent economic and non-economic damages and Defendants are liable to Plaintiffs in an amount to be determined at trial.

**WHEREFORE**, the Plaintiffs and members of the above proposed class pray that they be awarded compensatory and punitive damages and recover judgment against Defendants for the following:

1.    Reasonable and just compensation for injuries to interests in property, evacuation, shelter in place, and loss of use and enjoyment of property belonging to Plaintiff and members of the proposed classes within the areas affected by the catastrophe;

2.    All expenses and economic losses, including but not limited to lost income and

out-of-pocket expenses attendant to evacuation and/or shelter in place;

3.  Reasonable and just compensation and punitive damages for personal injuries, present and future medical expenses, nuisance, trespass, negligence, and strict liability, in amounts to be determined by a jury, to the utmost amounts allowed by law;

4.  Appropriate attorney fees and costs and expenses incurred in connection with the litigation of this matter;

5.  For an injunction requiring the Defendants to make safe Plaintiffs' property and places of business and employment of members of the proposed class;

6.  That Summons and process issue as to the Defendants and that the Defendants be served Summons and a copy of this Class action complaint as required by law, and that Defendants be required to appear and answer;

7.  That this case be certified as a class action pursuant to applicable Rules of Civil Procedure;

8.  Plaintiffs and members of the proposed class  demand a trial by jury; and

9.  For such other and further relief as this Court may deem just, proper, and equitable.

Respectfully submitted,


s/ Jasper D. Ward_____
**JONES WARD PLC**
Jasper D. Ward
Alex C. Davis
Marion E. Taylor Building
312 S. Fourth Street, 6th Floor
Louisville, Kentucky 40202
Telephone: (502) 882-6000
*Counsel for Plaintiffs and Proposed Class*

**BRYANT LAW CENTER**
Mark Bryant
Kevin Shannon
Bryant Law Center, PSC
601 Washington Street
Paducah, KY 42003
*Counsel for Plaintiffs and Proposed Class*

**FAYARD & HONEYCUTT**
Calvin C. Fayard, Jr.  (Louisiana Bar No. 5486)
D. Blayne Honeycutt (Louisiana Bar No. 18264)
Wanda J. Edwards  (Louisiana Bar No.  27448)
Fayard & Honeycutt, APC
519 Florida Avenue, SW
Denham Springs, LA 70726
Telephone:  (225) 664-4193
Facsimile:  (225) 664-6925
*Counsel for Plaintiffs and Proposed Class*
*To Be Admitted Pro Hac Vice*